IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

SPECTRON SITE GROUP,                                    *

      Plaintiff,

   v.                                                 *                    Civil Action No.

AIR PRODUCTS AND CHEMICALS, INC.,
As successor in interest to Escambia Chemical
Corporation;                                           *
AMERICAN GILSONITE COMPANY;
ATLANTIC OLDSMOBILE, LTC.;
BARRY-WEHMILLER COMPANIES, INC.,
And its subsidiaries UNITED CONTAINER              *
ACQUISITION CORP., MARQUIP LLC and
THE WARD MACHINERY COMPANY
For United Container Machinery, Inc.;
BIC CORPORATION, on behalf of itself and           *
As successor in interest to Sheaffer Eaton, Inc.;
Sheaffer, Inc., Sheaffer Pen Corporation; Sheaffer
Manufacturing Co., LLC; BIC USA Inc.; Sheaffer
Holdings (Delaware) Inc.; Sheaffer International    *
(Guernsey) Limited; and Sheaffer Holdings
(Guernsey) Limited;
CAMDEL METALS CORPORATION;
CAN CORPORATION OF AMERICA;                        *
CASTLE FORD;
C J R CHEMICAL COMPANY;
CONSOLIDATED CONTAINER COMPANY LLC,
For itself and as an alleged successor in interest to   *
Continental Plastics and RXI Plastics, Inc.;
DICK STEVENS CHEVROLET INC.;
DOWNTOWN GARAGE INC.;
ENVIRONMENTAL ENTERPRISES, INC.;                  *
FALSTROM COMPANY;
FIDELITY ENGINEERING CORP.
(Sparks, Baltimore County MD);
FLINT INK CORPORATION;                             *
FMC CORPORATION;
HALSTEAD INDUSTRIES, INC.;
HANDY & HARMAN TUBE CO., INC.;

**ICI AMERICAS INC.;**                                     *
**INTERNATIONAL PAPER;**
**KLEIN TOOLS, INC., as successor in interest**
**To Vaco Products, Inc.;**
**KRAFT FOODS GLOBAL, INC., as successor**          *
**In interest to General Foods;**
**L.D. CAULK, a division of**
**DENTSPLY International Inc.;**
**MALCOLM KONNER CHEVROLET CORP.;**          *
**MASCO CORPORATION, as indemnitor for Compac**
**Industries, Inc.;**
**MUELLER COPPER TUBE PRODUCTS, INC.**
**(f/k/a Halstead Industries, Inc.);**                    *
**NATIONAL PRINT GROUP, INC. for Heritage**
**National;**
**NORRIS INDUSTRIES, INC.;**
**OCHOA INDUSTRIAL SALES CORPORATION;**          *
**OFFRAY SPECIALTY NARROW FABRICS, INC.,**
**As successor in interest to Maryland Ribbon;**
**OMEGA PROTEIN, INC., as successor in interest to**
**Haynie Products, Inc. and Zapata Haynie Corporation;** *
**PARKER HANNIFIN CORPORATION;**
**PFR, Inc., f/k/a Perma-Flex Rollers, Inc.;**
**P.M.T. & ASSOCIATES, INC. (Baltimore City, MD);**
**PRECISION PRODUCTS GROUP, INC.;**                   *
**QUALITY CARRIERS, INC., on behalf of Montgomery**
**Tank Lines, Inc.;**
**QUATTRO AUTO BODY, INC.**
**(Bethesda, Montgomery County, MD);**                *
**RAM INDUSTRIES, LLC;**
**RAM MOTORS & CONTROLS, INC.;**
**ROTOREX COMPANY, INC.;**
**RUST-OLEUM CORPORATION;**                           *
**SAINT GOBAIN CORPORATION, for Norwood**
**Industries, Inc.;**
**SYMS CORP. for itself and as alleged**
**successor in interest to Stanley Blacker, Inc.;**      *
**TECHNICAL PROCESSING INC.;**
**TRANSTECH INDUSTRIES, INC.;**
**UNITED TECHNOLOGIES CORPORATION for**
**BASF Corporation as successor to Inmont Corporation;** *
**VAN WATERS & ROGERS, Inc.,**
**FOR Univar USA, Inc.;**

**WOOD-MODE INCORPORATED,**                                   *
**as successor in interest To Wood-Metal Industries, Inc.,**

      **Defendants.**

**(See Exhibit 1 for Addresses of Defendants)**

   *    *    *    *    *    *    *    *    *    *    *    *    *    *

**COMPLAINT FOR MONETARY DAMAGES**
**AND DECLARATORY RELIEF**

Plaintiffs, Spectron Site Group, by and through their undersigned counsel, file this Complaint and allege as follows:

**STATEMENT OF THE CASE**

1.        This is a civil action for contribution brought  pursuant to Section 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9613(f), as amended by the Superfund Amendments and Reauthorization Act of 1986, 100 Stat. 1613 (1986) ("CERCLA").  Plaintiffs seek contribution of costs incurred in connection with the facility known as the Spectron, Inc. Superfund Site ("Site") located near Elkton, Maryland.  In addition, Plaintiffs seek a declaratory judgment, pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, that each Defendant is liable under 42 U.S.C. § 9613(f)(1) to provide contributions to Plaintiffs for response costs which Plaintiffs have incurred or may incur in the future as a result of releases or threatened releases of hazardous substances from the Site.

**JURISDICTION AND VENUE**

2.        This Court has jurisdiction over the subject matter of this action and the parties hereto, pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in this district pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the claims arose and the threatened and actual releases of hazardous substances occurred in this district.

## THE PARTIES

4.      The member entities of Plaintiff are listed in Exhibit 2.

5.      Each of the Defendants is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

6.      Each of the Defendants conducted business in the State of Maryland and/or by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by each such Defendant at the Site within the meaning of CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

## GENERAL ALLEGATIONS

7.      The Site consists of approximately eight (8) acres located just outside Elkton, Maryland. From approximately 1961 to 1988 the site operated as a solvent recycling facility.  The Facility reclaimed, reprocessed and recycled industrial wastes consisting primarily of halogenated organic solvents, such as methylene chloride, tetrachloroethylene, and trichloroethylene, and volatile organic aromatics, such as benzene, toluene, and xylene.  At least one lagoon at the Site was used to dispose of process wastes generated at the facility.

8.      When recycling operations cased in August 1988, many hazardous substances that had been received, processed, generated and used in its operations were abandoned at the Site. Contamination at the Site consists of primarily chlorinated solvents which have been detected in:

groundwater seeps entering Little Elk Creek, which bisects the Site; surface water and sediments of Little Elk Creek; groundwater beneath and down-gradient of the Site; and soil on the Site.  Other contaminants found in shallow groundwater monitoring wells at the Site include: volatile organic compounds, semi-volatile organic compounds and some heavy metals.

9.      Little Elk Creek is designated by the state for water contact recreation, protection of aquatic life and wildlife, and fishing.  Several residents residing immediately adjacent to the Site and others living nearby use private wells for drinking water.  Site-related contaminants have been detected in some of these wells.

10.     In April 1989, EPA conducted an emergency assessment of the conditions at the Site. EPA observed approximately 1,300 drums and 62 tanks containing hazardous Substances on-site.

11.     In June 1989, the EPA Region III Regional Administrator approved the expenditure of funds pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, to address the releases and threat of releases of hazardous substances at the Site.  EPA's actions included over-packing drums, decanting leaking drums, collecting samples and establishing 24-hour security.

12.     On August 21, 1989, EPA entered into an Administrative Order by Consent (Docket No. III-89-230-DC), pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, with a group of PRPs.  This Order required the continuation of emergency response actions for the removal and disposal of the abandoned material identified at the Site, particularly the over-packed drums and tanks at the Site.

13.     EPA concurrently entered a second Administrative Order by Consent (Docket No. III-89-29-DC) with PRPs for reimbursement of response costs in the amount of $674,139.66.

14.     On February 1, 1990, EPA issued a Unilateral Administrative Order (Docket No. III-91-11-DC) for access, pursuant to CERCLA Sections 104(3) and 106(a), 42 U.S.C. §§ 9604(e) and 9606(a), to Paul J. Mraz and Sally K. Mraz, owners of the Site.

15.     On October 1, 1991, EPA Entered into a subsequent Administrative Order by Consent (Docket No. III-91-40-DC) with a group of PRPs to develop a plan to abate, mitigate, and/or eliminate the seepage of hazardous substances into Little Elk Creek.

16.     On May 20, 1996, EPA entered into an Administrative Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") (Docket No. III-96-15-DC), pursuant to CERCLA Sections 104 and 122, 42 U.S.C. §§ 9605 and 9622, with certain PRPs.  The RI/FS, which is currently ongoing, will determine the nature and extent of contamination at the Site.

17.     In August 2001, EPA offered the First Round De Minimis Settlement to approximately 900 de minimis-eligible PRPs.  About 500 of those de minimis PRPs settled their liability at the Site during that First Round, which was finalized by the United States District Court for the District of Maryland in March 2003.  United States v. ABB, Inc., Civil No. AMD 02-3858.

18.     There have been "releases," within the meaning of CERCLA Section 101(22), 42 U.S.C. § 9601(22), or the threat of "releases" of hazardous substances into the environment from the Site at times relevant to this action.

19.     The Site is a facility within the meaning of CERCLA Section 101(9), 42 U.S.C.   § 9601(9).

20.     Hazardous substances, within the meaning of CERCLA Section 101(14), 42 U.S.C. § 9601(14), have been disposed of at the Site.

## COUNT I
## CONTRIBUTION

21.     Paragraphs 1-20 are realleged and incorporated herein by reference.

22.     CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3), provides in part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set
forth in subsection (b) of this section –
\*        \*        \*        \*        \*
(3) any person who by contract, agreement, or otherwise arranged for disposal or
treatment, or arranged with the transporter for transport for disposal or treatment, of
hazardous substances owned or possessed by such person, by any other party or entity at
any facility . . . owned or operated by another party or entity and containing such
hazardous substances …
from which there is a release, or a threatened release which causes the incurrence of
response costs, of a hazardous substance, shall be liable for ---
        (A)  all costs of removal or remedial action incurred by the United States
        Government or a State or an Indian tribe not inconsistent with the national
        contingency plan[.]

23.     The actions taken by Plaintiffs in connection with the Site constitute "response" actions

within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), in connection with which

Plaintiffs have incurred costs.

24.     The costs incurred by Plaintiffs in connection with the Site are not inconsistent with the

National Contingency Plan, which was promulgated under CERCLA Section 105(a), 42 U.S.C. §

9605(a), and codified at 40 C.F.R. Part 300, et seq.

25.     As a result of the releases or threatened releases of hazardous substances from the Site,

Plaintiffs have incurred and will continue to incur response costs, including the costs of removal or

remedial action as defined in Sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. § 9601(23), (24)

and (25), and as used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

26.     CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1) authorizes persons to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

27.     Pursuant to CERCLA Sections 107(a) and 113(f)(1), 42 U.S.C. §§ 9607(a) and 9613(f)(1), the Plaintiffs seek contribution of Defendants' equitable allocation of all response costs incurred and to be incurred by the Plaintiffs in connection with the Site, including enforcement costs and prejudgment interest on such costs.

28.     To date, Plaintiff has incurred $12,486,879 in response costs, all of which are necessary response costs.  42 U.S.C. § 9607(a)(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

1.     Award Plaintiffs a judgment against Defendants, for the equitable allocation of all costs incurred by the Plaintiffs in accordance with Administrative Order by Consent (Docket No. III–91-40-DC) and Administrative Order on Consent for Remedial Investigation/Feasibility Study ("RI/FS") (Docket No. III-96-15-DC) in connection with the Site, including all costs in this action; and

2.     Award Plaintiffs a declaratory judgment that Defendants will be liable, with other liable parties, for the equitable allocation of any further response costs that Plaintiffs may incur as a result of releases or threatened releases of hazardous substances from the Site; and

3.      Grant any further relief the Court deems appropriate.


Respectfully submitted,

/s/      *Jason M. St. John*

_____
Jason M. St. John, Bar No. 26384
Saul Ewing LLP
500 E. Pratt Street
Baltimore, Maryland  21202
(410) 332-8898
(410) 332-8288 (facsimile)
jstjohn@saul.com (email)

Of Counsel:
Carl B. Everett, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102-2186
(215) 972-7171
ceverett@saul.com

Attorneys for Plaintiffs,
Spectron Site Group